# McCorriston Miller Mukai MacKinnon LLP
### ATTORNEYS AT LAW

February 9, 2006

BFI Capital, LLC
50 Main Street, Suite 1000
White Plains, New York 10606
Attention: Mr. Lawrence I. Linksman

    Re:    Lender: BFI Capital, LLC
               Borrower: PMP II, LLC
               <u>Loan in the amount of $18,500,000 (the "Loan")</u>

Dear Mr. Linksman:

        We have acted as special counsel for PMP II, LLC, a Delaware limited liability company (the "<u>Borrower</u>"), in connection with a loan made by BFI Capital, LLC, a Delaware limited liability company ("<u>Holder</u>"), to Borrower in the principal amount of $18,500,000 (the "<u>Loan</u>").

        This Opinion Letter is governed by, and shall be interpreted in accordance with, the Legal Opinion Accord (1991) of the American Bar Association Section of Business Law, as modified by the Report of the Section of Real Property, Probate & Trust Law of the American Bar Association and the American College of Real Estate Lawyers, and as further modified by the Hawaii 2000 Report Regarding Lawyers' Opinion Letters in Mortgage Loan Transactions of the Opinion Committee of the Real Property and Financial Services Section of the Hawaii State Bar Association (such Legal Opinion Accord, as so modified, being referred to herein as the "<u>Accord</u>"). As a consequence, and in addition to the qualifications, assumptions, exceptions and limitations set forth in this letter, this Opinion Letter is subject to a number of qualifications, assumptions, exceptions, definitions, limitations on coverage and other limitations, all, as more particularly described in the Accord, and this Opinion Letter should be read in conjunction therewith.

        The law covered by the opinions expressed herein is limited to the laws of the State of Hawaii (sometimes alternatively referred to herein as the "<u>State</u>"), and therefore the term "Opining Jurisdiction" as used in the Accord shall be deemed to be the State of Hawaii. Except as otherwise indicated herein, capitalized terms used in this Opinion Letter shall have the meanings ascribed to such terms in the Loan Documents (as hereinafter defined) or the Accord, as applicable.

        For purposes of rendering our opinion set forth herein, we have reviewed a copy of the following documents which pertain directly to the Loan (collectively, the "<u>Loan Documents</u>"):

128544.6
2/8/06 5:28 PM

P.O. Box 2800 • Honolulu, Hawaii 96803-2800
Five Waterfront Plaza, 4th Floor • 500 Ala Moana Boulevard • Honolulu, Hawaii 96813
Telephone: (808) 529-7300 • Fax: (808) 524-8293 • E-mail: info@m4law.com


EXHIBIT "3"

BFI Capital, LLC
February 9, 2006
Page 2

1.  Promissory Note dated February 9, 2006, made in the principal amount of $16,650,000.00 by Borrower, as the "Borrower" therein, in favor of Holder, as the "Lender" therein.

2.  Promissory Note dated February 9, 2006, made in the principal amount of $1,850,000.00 by Borrower, as the "Borrower" therein, in favor of Holder, as the "Lender" therein.

3.  Mortgage and Security Agreement dated February 9, 2006, made by Borrower, as the "Mortgagor" therein, in favor of Holder, as the "Mortgagee" therein, (the "Mortgage") covering that certain parcel of land being Lot B-1 – "Kamilonui 2" Subdivision – Royal Patent Number 4475 – Land Commission Award 7713, Apana 30 to Victoria Kamamalu, City and County of Honolulu, State of Hawaii (the "Property"), securing the repayment of the Promissory Notes described in paragraphs 1 and 2 hereinabove (collectively, the "Notes").

4.  Absolute Assignment of Leases and Rents for the premises referred to in Paragraph 1 above, dated February 9, 2006, made by the Borrower, as the "Owner" therein, in favor of Holder, as the "Lender" therein (the "Assignment"), securing the repayment of the Notes.

5.  A form of UCC Financing Statement made by Borrower, as Debtor, in favor of Holder, as Secured Party (the "Financing Statement").

6.  Limited Guaranty of Payment dated as of February 9, 2006, made by PRM Realty Group, LLC, an Illinois limited liability company ("PRM"), Bagelpipe, LLC, a Hawaii limited liability company ("Bagelpipe"), RCCI Management, LLC, a Delaware limited liability company ("RCCI"), Peter R. Morris ("Morris"), and John Henry Felix ("Felix") in favor of Holder (the "Guaranty").

7.  Environmental Indemnification Agreement dated February 9, 2006, made by Borrower PRM, Bagelpipe, RCCI and Felix, jointly and severally, in favor of Holder.

8.  Security Agreement dated February 9, 2006, executed by Borrower, as the "Debtor" therein, and Holder, as the "Secured Party" therein.

9.  Security Agreement dated February 9, 2006, executed by PRM, as the "Debtor" therein, in favor of Holder, as the "Secured Party" therein.

10. Security Agreement dated February 9, 2006, executed by Bagelpipe, as the "Debtor" therein, in favor of Holder, as the "Secured Party" therein.

BFI Capital, LLC
February 9, 2006
Page 3

11. Mortgagor's Affidavit of Title dated February 9, 2006, executed by Borrower.

12. Undertaking and Errors and Omissions Form dated February 9, 2006, executed by Morris, Felix, PRM, Bagelpipe and RCCI.

13. Member's and/or Managers Certificate of Borrower, Morris, Felix, PRM, Bagelpipe and RCCI.

14. Estoppel Certificate dated February 9, 2006, made by Borrower in favor of Holder.

For purposes of rendering the opinion set forth hereinbelow, we have also examined originals or copies of the following documents relating to Borrower (collectively, the "Authority Documents"):

(A) The Articles of Organization, Operating Agreement, Good Standing Certificate and related organizational documents for Borrower.

(B) Borrower's resolution authorizing the Loan dated January 12, 2006.

(C) Opinion of Nancy J. Cass, in house counsel to Borrower, dated February 9, 2006 (the "Cass Opinion").

(D) Opinion of Steven R. Tanenbaum of the law firm of Solomon & Tanenbaum P.C., special counsel to Borrower, dated February 9, 2006.

Further, we have examined originals or copies of the following documents with respect to the parties indicated:

(1) Regarding Bagelpipe (collectively, "Bagelpipe Authority Documents"):

  (a) Articles of Organization of Bagelpipe dated December 1, 2005

  (b) Limited Liability Company Agreement of Bagelpipe dated as of February 1, 2006.

(2) Regarding RCCI (collectively, "RCCI Authority Documents"):

  (a) Certificate of Formation of RCCI dated July 24, 2001.

  (b) Limited Liability Company Operating Agreement of RCCI dated July 24, 2001.

  (c) Certificate of Good Standing for RCCI dated December 8, 2005.

BFI Capital, LLC
February 9, 2006
Page 4

    (d)    Articles of Incorporation for Royal Contracting Co., Ltd, a Hawaii corporation ("Royal"), member of RCCI, dated February 11, 19611

    (e)    By-laws of Royal, undated.

    (f)    Certificate of Good Standing for Royal dated January 12, 2006.

    (g)    Resolution of RCCI Management, LLC dated January 11, 2006.

In addition to the Loan Documents and Authority Documents, we have reviewed originals or copies of Preliminary Report dated September 23, 2005, covering the Property (the "Title Report").

For purposes of the opinions expressed below, we have assumed that all natural persons executing the Loan Documents have the legal capacity to do so; that all signatures on all documents submitted to us are genuine (other than those of the Borrower); that all documents submitted to us as originals are authentic; and that all documents submitted to us as certified copies or photocopies conform to the originals of such documents, which themselves are authentic. We also assume that the persons signing the Loan Documents on behalf of the Holder are legally competent and authorized to execute, deliver and cause the Holder to perform the Loan Documents to which they are a party in their individual and corporate capacity.

Based solely upon our examination of the Loan Documents and the Authority Documents, and subject to the qualifications herein set forth, we are of the opinion that:

    (1)    There is no provision in any of the Authority Documents and there is no provision or term:

        (a)    of any mortgage, indenture, lease or agreement encumbering the Property; or

        (b)    to our knowledge, of any license or permit issued by the City and County of Honolulu or State of Hawaii, or of any judgment, decree or order entered in the Courts of the State of Hawaii or Federal District Court for the District of Hawaii; or

        (c)    of any State of Hawaii statute or City and County of Honolulu ordinance, rule or regulation to which Borrower is subject or bound, that would impair the power of Borrower to enter into and carry out the undertakings required under the Loan Documents.

    (2)    To our knowledge, but without independent verification, no consents, permissions or authorizations are required from any other parties in connection with the execution and delivery by Borrower of the Loan Documents or Bagelpipe, RCCI or Felix of the Guaranty.

BFI Capital, LLC
February 9, 2006
Page 5

(3)  The Mortgage and Assignment are in proper form for recording in the Bureau of Conveyances of the State of Hawaii. Said Bureau of Conveyances is the only office in the State of Hawaii in which the Mortgage is required to be recorded in order to perfect a mortgage lien against the Property, and the only office in which the Assignment may be recorded.

(4)  Subject to the qualification contained in this paragraph (4) hereinbelow, (i) the Mortgage contains provisions such as to render the rights and remedies of Holder adequate for the realization against the Property of the benefits of the security described in the Mortgage, and (ii) the Assignment contains provisions adequate for the realization against the property described in the Assignment of the benefits of the security described therein.

Notwithstanding anything contained in this paragraph (4) hereinabove, with respect to the enforceability of the provisions in the Loan Documents relating to conflicts of law, consent to jurisdiction, choice of forum or choice of law, we advise you of the following:

The Hawaii Supreme Court has held, with respect to contracts generally, that when the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, the chosen law will generally be applied. *See Airgo, Inc. v. Horizon Cargo Transport, Inc.*, 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983). Similarly, the Hawaii UCC provides generally that the parties to a transaction can agree that the law of a particular state shall govern their rights and duties where the transaction bears a reasonable relationship to that state. Hawaii Revised Statute ("H.R.S.") §§ 490:1-105. There are, however, several exceptions to these general rules.

First, real property is exclusively subject to the law of the state within which it is situated, and therefore, "all matters concerning taxation of such realty, title, alienation, and the transfer of such realty and the validity, effect, and construction which is to be accorded agreements intending to convey or otherwise deal with such realty are determined by the doctrine of *lex loci rei sitae,* that is, the law of the place where the land is located." *Grayco Land Escrow, Ltd.*, 57 Haw. 436, 450, 559 P.2d 264, 274 (1977).

Second, the Hawaii UCC mandates the application of the law of a certain state to determine perfection, the effect of perfection or nonperfection, and the priority of a security interest in certain collateral covered by the Loan Documents. *See* H.R.S. §§ 490:1-105 and 9-103.

Third, the Restatement (Second) Conflict of Laws (the "Restatement") provides that an otherwise effective choice of law provision in a contract

BFI Capital, LLC
February 9, 2006
Page 6

will not be given effect if the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Section 188 [relating to most significant contacts], would be the state of applicable law in the absence of an effective choice of law by the parties." Restatement (Second) Conflict of Laws, § 187(2)(b). *See also* Restatement § 203, comments e and f (applying this rule in modified form to usury laws). Hawaii courts look to the Restatement for guidance regarding conflict of laws issues. *See UARCO Inc., v. Lam,* 18 F.Supp.2d 1116 (D.Haw. 1998); *California Fed. Sav. & Loan v. Bell,* 6 Haw. App. 597, 735 P.2d 499 (1987).

We also point out that an otherwise valid choice of law provision may be deemed waived by the conduct of the parties. *See Touche Ross Ltd. v. Filipek,* 7 Haw. App. 473, 479, 778 P.2d 721, 726 (1989) (parties held to have waived choice of law provision selecting Canadian law as the governing law where parties relied on Hawaii statutes and case law in course of litigation).

Given the above, if a Hawaii court were to apply Hawaii law instead of New York law, our opinion set forth in the first paragraph of this Section 4 would remain unchanged, and the other Loan Documents would be enforceable under Hawaii law in accordance with their respective terms.

(5) The Financing Statement is in proper form for filing in the Bureau of Conveyances of the State of Hawaii. Said Bureau is in the only office of the State of Hawaii in which the UCC-1 is required to be filed in order to perfect the security interests therein described under the Hawaii Uniform Commercial Code (the "Hawaii UCC"). Upon proper filing and recording of the Hawaii UCC, Holder shall have good, valid and perfected security interests in the collateral described in the Security Instruments.

(6) We have not been made aware by Borrower of any violations of environmental or conservation laws, ordinances, rules or regulation at the Property.

(7) Based solely on a review of the Title Report and the Mortgagor's Affidavit of Title dated February 9, 2006, executed by the Borrower, there are no outstanding judgments against Borrower or any judicial actions pending against Borrower.

(8) The amounts to be received by Holder as interest payments under the Notes will constitute lawful interest and will be neither usurious nor illegal under the laws of the State of Hawaii.

BFI Capital, LLC
February 9, 2006
Page 7

      (9)    Based solely on a Certificate of Authority issued on January 26, 2006, PMP is authorized to do business in the State of Hawaii.

In addition, subject to the qualifications herein set forth, we are of the opinion that:

      (i)    Bagelpipe, based solely on the Bagelpipe Authority Documents, has all requisite power and authority to execute and deliver the Guaranty and to carry out the transactions contemplated thereby and the covenants and agreements contained therein.

      (ii)    PRM, based solely on the Cass Opinion, has all requisite power and authority to execute the Guaranty on behalf of Bagelpipe.

      (iii)    RCCI, based solely on the RCCI Authority Documents, has all requisite power and authority to execute and deliver the Guaranty and to carry out the transactions contemplated thereby and the covenants and agreements contained therein, and the individual executing the Guaranty on behalf of RCCI has been duly authorized and empowered to do so.

      (iv)    Felix is of legal age and is not under any legal disability or duress.

      (v)    To our knowledge, there are (x) no outstanding judgments against Bagelpipe, and (y) no judicial actions pending or threatened against Bagelpipe.

The opinions set forth above are subject to: (A) applicable bankruptcy, insolvency, reorganization, fraudulent transfer, fraudulent conveyance, moratorium or similar laws from time to time in effect affecting creditors' rights generally; and (B) general principles of equity (including, without limitation, standards of materiality, good faith, fair dealing and reasonableness), whether in a proceeding at law or in equity. We note that, in applying general principles of equity, a court may decline to grant specific performance and other equitable remedies, and may decline to enforce the rights of the Holder in connection with a default or breach of a representation, warranty or covenant if such rights were to be invoked in the context of a default or breach that is immaterial, or in the context of fraud or exploitative overreaching by the Holder, or unconscionable conduct by the Holder to exploit a technical breach. Moreover, any provisions of the Loan Documents that permit the Holder to take actions or make determinations may be subject to requirements that such actions be taken and such determinations be made on a reasonable basis and in good faith.

The opinions expressed in this letter are made subject to and are qualified by the following:

      (A)    The opinions expressed herein are subject to the General Qualifications set forth in the Accord; in other words, the Bankruptcy and Insolvency Exception, the Equitable Principles Limitation and any Other Common Qualifications that apply to the particular opinion in question.

BFI Capital, LLC
February 9, 2006
Page 8

        (B)    All of the Loan Documents to be filed and/or recorded have been or will be timely and correctly filed and/or recorded in or with the appropriate office for the same and all mortgage taxes and other taxes and recording or filing fees due and owing in connection with the Loan or the execution, delivery and/or recordation of any documents will be timely and fully paid. Specifically, we assume that the Mortgage, Assignment and Financing Statement will be recorded in the Bureau of Conveyances of the State of Hawaii.

        (C)    We understand that with respect to title matters, the Holder will be relying upon a policy of title insurance to be issued to the Lender by a title insurance company satisfactory to Holder, and in rendering the opinions expressed in this Opinion Letter, we have made no examination of, and express no opinion with respect to, (i) the existence of, state of title to, or descriptions of, any of the Property, whether real or personal, (ii) the nature or extent of the Borrower's rights in, or title to, any of the Property, (iii) the condition, location or ownership of any of the Property, or (iv) the creation, perfection and priority of the liens and security interests granted under the Loan Documents or the existence or non-existence of any other liens, security interests, charges or encumbrances in or on any of the Property.

        (D)    With respect to security interests which may be perfected by the filing of financing statements under the Hawaii UCC, we point out that: (i) in order to maintain such perfection, continuation statements must be filed under Section 490:9-515 of the Hawaii UCC within six months prior to the expiration of each five-year period following the filing of the original financing statements to which they relate; (ii) under Sections 490:9-507(c) and 508 of the Hawaii UCC, if the debtor changes its name, identity or corporate structure so as to make the original financings statements seriously misleading, perfection by filing shall terminate as to Collateral acquired more than four months after the change unless appropriate new financing statements indicating the debtor's new name, identity or corporate structure are filed with the Bureau of Conveyances prior to the expiration of such four-month period; (iii) under certain circumstances, a third party may acquire certain items of Collateral free and clear of a security interest under Sections 490:9-320, 490:9-323, 490:9-330, and 490:9-331 of the Hawaii UCC; and (d) in the case of cash proceeds of Collateral, continuation of perfection is limited to the extent set forth in Section 490:9-315 of the Hawaii UCC.

        (E)    No opinion is expressed herein with respect to (i) the enforceability of any provision contained in the Loan Documents to set off and apply deposits of the Borrower to the obligations of Borrower thereunder or as to the enforceability of any waiver of demand, claims or rights of set-off or counterclaim or of any stay or extension laws, (ii) the enforceability of any provision contained in the Loan Documents purporting to establish evidentiary standards, (iii) the enforceability of any provision of any of the Loan Documents providing for premiums, interest on interest, interest after judgment, or the waiver of the applicability of any statutory judgment rate subsequent to the entry of a monetary judgment and/or judgment of foreclosure, or (iv) the validity, binding effect or enforceability of security interests purported to be created by the Documents in any collateral (including any proceeds thereof) which (A) constitute cash or deposit accounts, or (B) are otherwise not subject to the UCC of the State of Hawaii (other than with respect to the Mortgage on the Property.

128544.6
2/8/06 5:28 PM

BFI Capital, LLC
February 9, 2006
Page 9

(F) We express no opinion on the validity, binding effect or enforceability of provisions of the Loan Documents (i) which waive any rights afforded to any party thereto under any statutory or constitutional provision or applicable law, (ii) which waive broadly or vaguely stated rights or future rights, or waive certain rights, counterclaims or defenses to obligations where such waivers are against statutes, law or public policy, (iii) which waive trial by jury, (iv) that provide that rights or remedies are not exclusive, that every right or remedy is cumulative and may be exercised in addition to or with any other right or remedy or that the election of some remedy or remedies does not preclude recourse to one or more other remedies, (v) that provide that injunctive relief or specific performance may be available as a remedy for breach (because such remedy is subject to the discretion of the court before which a proceeding therefor may be brought), (vi) that purport to prevent oral modification or waivers or (vii) the breach of which a court concludes is not material or does not materially adversely affect the Holder. Notwithstanding the foregoing, the inclusion of provisions of the Loan Documents which may be unenforceable in whole or in part, do not affect the validity of the balance of such Loan Documents, and the practical realization of the benefits created by such Documents taken as a whole will not be materially impaired by the unenforceability of those particular provisions.

(G) We express no opinion on the validity or enforceability of any provisions of the Loan Documents under which any party thereto disclaims any obligations of good faith, fair dealing, diligence, commercial reasonableness and/or care, or prior notice.

(H) We express no opinion as to the compliance by the Borrower with applicable laws, regulations, rules, orders or municipal ordinances, including, without limitation, environmental, zoning, subdivision, land use, building, planning, energy or conservation laws, regulations, rules or orders.

(I) Our opinion is subject to judicial decisions which indicate that public policy may render unenforceable provisions respecting payment of costs and expenses of enforcement, including, without limitation, attorneys' fees.

(J) Without limiting anything contained in this letter hereinabove, we point out that, in applying general principles of equity, a court may decline to grant specific performance and other equitable remedies, and may decline to enforce the right of the Holder to exercise any remedies in connection with an Event of Default (as defined in the Loan Documents) that is immaterial. Moreover, provisions of the Loan Documents that permit the Holder to take actions or make determinations may be subject to requirements that such actions be taken and such determinations be made on a reasonable basis and in good faith.

(K) We express no opinion as to any federal, state or local securities, tax or environmental laws, rules or regulations.

(L) We express no opinion as to the effect of non-compliance by the Holder with any state or federal laws or regulations applicable to the transactions contemplated by the Loan Documents because of the nature of the Holder's business.

128544.6
2/8/06 5:28 PM

BFI Capital, LLC
February 9, 2006
Page 10

     (M)    None of the opinions hereinabove expressed shall in any way be deemed to constitute and/or imply the giving by this law firm of an opinion on the laws of any other jurisdiction other than the laws of the Opining Jurisdiction.

    The phrases "to our knowledge" or "known to us" as used herein with respect to the existence or absence of facts means that no information has come to the attention of the attorneys in our office who have worked on the Borrower's matters during the course of our representation of the Borrower with respect to the Loan, which would give such individuals actual knowledge of the existence or absence of such facts.

    We are qualified to practice law only in the State of Hawaii and do not purport to be experts on, or to express any opinion herein concerning, any laws other than the laws of the State of Hawaii and the federal laws of the United States of America. We have made no independent investigation of the laws of any other jurisdiction.

    The opinions expressed in this letter are given solely for the benefit of Holder, its successors and assigns (including any purchase or participant of the Loan), Capital Source Finance LLC, Granoff, Walker & Forlenza P.C., and Solomon & Tanenbaum P.C. in connection with the transaction referred to herein. The opinions expressed in this letter may not be relied upon by any other person, firm or corporation for any purpose, without our prior written consent.

    The opinions expressed in this letter are rendered as of the date hereof and we express no opinion as to circumstances or events that may occur subsequent to such date.

                    Very truly yours,

                    McCORRISTON MILLER MUKAI MacKINNON

                    Clifford J. Miller

CJM:ja