SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------X

BFI CAPITAL, LLC, and D.B. ZWIRN REAL   :
ESTATE CREDIT PARTNERS L.L.C.,         :
                                     :
                Plaintiffs,   :

- against -         :

McCORRISTON MILLER MUKAI       :
MacKINNON LLP and               :
WILLIAM C. McCORRISTON,      :

                Defendants.   :

-------------------------------------------------------X

Index No.: *603748/09*

**SUMMONS**

*The basis of venue designated
is that Plaintiffs' principal
offices are located in
the County of New York*

TO THE ABOVE-NAMED DEFENDANTS:

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with this summons, to serve a notice of appearance, on plaintiff within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
      December 14, 2009

                          REED SMITH LLP

                          By:_____
                               Lance Gotthoffer
                        599 Lexington Ave
                        New York, New York 10022
                        (212) 521-5400
                        *Attorneys for Plaintiffs*

Defendants' Addresses:

| McCorriston Miller Mukai MacKinnon LLP | William C. McCorriston |
|---|---|
| Five Waterfront Plaza | c/o McCorriston Miller Mukai MacKinnon LLP |
| 500 Ala Moana Boulevard | Five Waterfront Plaza |
| Honolulu, Hawaii 96813 | 500 Ala Moana Boulevard |
| | Honolulu, Hawaii 96813 |

EXHIBIT " 4 "

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------X

BFI CAPITAL, LLC, and D.B. ZWIRN REAL
ESTATE CREDIT PARTNERS L.L.C.,

          Plaintiffs,

      - against -

McCORRISTON MILLER MUKAI
MacKINNON LLP and
WILLIAM C. McCORRISTON,

          Defendants.

------------------------------------------------------------X

Index No.: 603748/09

**COMPLAINT**

Plaintiffs by their attorneys, Reed Smith LLP, respectfully allege as follows:

## NATURE OF THE ACTION

1.    This is an action to recover damages for Defendants' breach of fiduciary duties, fraud, professional malpractice/negligence, tortious interference with contract, and other wrongful conduct as more fully set fort below.

## PARTIES

2.    Plaintiff BFI Capital, LLC ("BFI") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal office at 50 Main Street, Suite 1000, White Plains, New York 10606.

3.    Plaintiff D.B. Zwirn Real Estate Credit Partners, LLC ("DBZ", and together with BFI, "Plaintiffs") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal office at 746 Fifth Avenue in the City, County and State of New York.

4.    Upon information and belief, Defendant McCorriston Miller Mukai MacKinnon LLP ("McCorriston Firm" or "Firm") is a law firm partnership with its offices at Five Waterfront Plaza, 500 Ala Moana Boulevard, Honolulu, Hawaii 96813.

5.    Upon information and belief, Defendant William C. McCorriston ("McCorriston" and together with the McCorriston Firm, the "Defendants") is a name partner of the McCorriston Firm and serves as the Firm's Litigation Section Chairman.

6.    Each of the Defendants has provided legal services to persons or entities in New York, has issued opinion letters to entities or persons in New York, has transacted business in New York or has committed tortious acts within the State of New York or has committed tortious acts outside the state causing injury herein such that jurisdiction over the Defendants is proper pursuant to C.P.L.R. 302.

7.    Venue is properly lain in this county based on the residence of Plaintiff BFI and the fact that some of the tortious acts complained of occurred in this county.

## BACKGROUND & FACTUAL ALLEGATIONS

The Loan

8.    In or about February 2006, PMP II, LLC ("PMP II"), sought to borrow up to $18,500,000 from BFI (the "Loan"). The purpose of the Loan was to provide pre-development bridge financing for a cemetery project in Honolulu, Hawaii. To evidence the Loan, PMP II executed, among other things, two promissory notes, both dated as of February 9, 2006, in the amounts of $16,650,000.00 and $1,850,000.00, respectively (together, the "Notes").

9.    The McCorriston Firm represented PMP II in connection with that transaction.

10.    In order to satisfy BFI's request that it have a legal opinion on Hawaiian law matters as a condition precedent to closing the Loan and because PMP II was anxious to have the Loan close, PMP II arranged to have the McCorriston Firm render an opinion directly to BFI

with respect to Hawaiian law matters pertaining to the Loan.  The McCorriston Firm agreed to provide such an opinion, and BFI agreed to this arrangement as well.

11.   Accordingly, to enable the Loan to close, on February 9, 2006, the McCorriston Firm sent an opinion letter addressed to BFI with respect to the Loan knowing that BFI and its assignees would rely upon its Opinion in deciding to close the Loan (and expressly stating therein that it could be relied upon as well by BFI's assignees).  A true copy of this opinion letter (the "Opinion"), is attached hereto as <u>Exhibit A</u>.

12.   By so doing, the McCorriston Firm undertook a limited legal representation of BFI.

13.   As counsel for BFI in this capacity, the McCorriston Firm owed fiduciary and other duties to BFI including duties of loyalty and disclosure relating to the subject matter of its Opinion.

14.   The Opinion did not disclose – and Defendants never informed BFI – that there were any requirements of Hawaiian law that had not been satisfied or that would impede the ability of the parties to close the Loan transaction as contemplated.

15.   The obligation of PMP II to repay the Loan was secured, *inter alia*, by a certain Mortgage, Security Agreement and Financing Statement (the "Security Agreement" and together with the Notes, the "Loan Documents"), dated February 9, 2006, which was duly recorded in the City and County of Honolulu, State of Hawaii.

16.   In order for the Loan transaction to close, BFI also required guarantees from certain persons and entities associated with PMP II.  That guaranty was also executed on February 9, 2006 (the "Guaranty").  A true copy of the Guaranty, is attached hereto as <u>Exhibit B</u>.   One of the guarantors is a limited liability company called BagelPipe, LLC ("BagelPipe").  Defendant

McCorriston is a member of another limited liability company called Moki Mac, LLC, which, in turn, is a member of BagelPipe.

17.    BagelPipe and the other guarantors agreed, *inter alia*, to pay all reasonable expenses and costs incurred in enforcing the Guaranty and all damages, expenses and costs incurred in connection with certain events specified in paragraph 1.(a)(iv) of the Guaranty and certain specified percentages of any additional interest advanced in order to fund an interest reserve.

18.    Moreover, the Guaranty provides that the guarantors "acknowledge that this Guaranty and the [guarantors'] obligations under the Guaranty are and shall at all times continue to be absolute, irrevocable and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Guaranty...."

19.    Pursuant to the Guaranty, BagelPipe and the other guarantors agreed to

> absolutely, unconditionally and irrevocably waive any and all right to assert or interpose any defense (other than the final and indefeasible payment in full of the Debt), setoff, counterclaim or cross-claim of any nature whatsoever with respect to this Guaranty or the obligations of the [guarantors] under this Guaranty, or the obligations of any other person or party (including without limitation, the Borrower) relating to this Guaranty, or the obligations of the [guarantors] hereunder or otherwise with respect to the Loan in any action or proceeding brought by BFI Capital to collect the Debt, or any portion thereof, or to enforce the obligations of the [guarantors] under this Guaranty....

20.    The McCorriston Firm specifically stated in the Opinion that it had reviewed *inter alia* the Loan Documents prior to rendering the Opinion.

21.    In addition, the Opinion confirmed that BagelPipe had "all the requisite power and authority to execute and deliver the Guaranty and to carry out the transactions contemplated thereby and the covenants and agreements contained therein."

22.    The Opinion included similar confirmations and representations with respect to the other guarantors.

23.    In reliance upon the Opinion rendered by the McCorriston Firm, the Security Agreement and the Guaranty, BFI entered into the Loan.

24.    As contemplated by the parties, BFI funded approximately 10% of the loan at closing, with DBZ funding the balance as a co-lender.  As understood by all parties at closing, the Notes were assigned to DBZ as servicing lender, with BFI remaining on risk for the funds it loaned to PMP II.

25.    Upon PMP II's request and pursuant to a Loan, Notes, and Mortgage Modification and Extension Agreement dated January 31, 2007 (the "First Extension Agreement"), the maturity date of the Loan was extended to January 14, 2008; and then to July 1, 2008 pursuant to a Second Loan, Notes, and Mortgage Modification and Extension Agreement dated September 1, 2007 (the "Second Extension Agreement").  In connection with the Second Extension Agreement and to induce BFI and DBZ to agree to such extension, BagelPipe and the other guarantors executed a Second Reaffirmation of Guaranty (the "Guaranty Reaffirmation") and thereby reaffirmed each and every one of their representations, covenants, warranties, waivers, consents, and guarantees.

26.    In or about July 2008, PMP II defaulted on the Loan, and after efforts to negotiate a resolution proved unsuccessful, Plaintiffs commenced a foreclosure action in the Hawaiian state court.  Plaintiffs also commenced an action on the Guaranty in New York State Supreme Court.

27.    Unbeknownst to Plaintiffs at the time, the day before their foreclosure action was commenced, PMP II together with certain of the guarantors in the New York action commenced a declaratory suit in the United States District Court for the District of Hawaii, seeking to set

aside the Loan on a variety of grounds including, but not limited to, the assertion that the Loan violated Section 454-8 of the Hawaii revised statutes dealing with the licensing of mortgage brokers, as interpreted by the Hawaiian Supreme Court in <u>Beneficial Hawaii, Inc. v. Kida</u>, 96 Hawaii 289, 30 P.3d 395 (2001). The law firm that brought the declaratory action on behalf of PMP II and the guarantors was the McCorriston Firm, and Defendant McCorriston's name appears on the pleading.

28.    Prior to the service of that pleading on Plaintiffs, Plaintiffs had never been told of any potentially applicable Hawaiian laws or regulations pertaining to mortgage brokers that could affect the Loan, Guaranty, or Plaintiffs' ability to be repaid thereunder.

29.    Moreover, Defendants advised PMP II to amend that complaint and also assert a claim against Plaintiffs for violation of Section 10(b) of the Securities Exchange Act ("Exchange Act") and Rule 10b-5 promulgated thereunder, on the basis that the Loan was deemed a "security" under the federal securities laws and that the Plaintiffs had made misrepresentations to PMP II and the entities providing the Guaranty so as to entice them to enter into the transaction.

30.    Prior to the service of that amended complaint on Plaintiffs, Plaintiffs had never been told that the Loan could be deemed a "security" under the federal securities laws and trigger the application of the Exchange Act.

31.    The relief being sought through the complaint filed by PMP II *et al* through the Defendants (as amended and consolidated with the foreclosure action which PMP II *et al*, through the Defendants, had removed to the federal court in Hawaii), would, by its terms, result in Plaintiffs' losing both the ability to foreclose and the ability to recover their Loan which, by that time, was in the amount of $25,160,055.

32.   Although not referenced in the Opinion, the McCorriston Firm was intimately familiar with the Hawaiian mortgage broker statute and the Kida decision at the time they rendered the Opinion, having defended a lender against a Kida claim in January 2005, a year before it issued the Opinion. City Bank v. Abad, 106 Hawaii 406, 105 P.3d 1212 (Ct. App. 2005).

33.   In addition, the Guaranty action was removed to federal court and, after Plaintiffs voluntarily dismissed and re-filed again in New York State Court, the guarantors answered, asserting, *inter alia*, that the underlying Loan Documents were void under Kida.  They did this even though the Guaranty (which is governed by New York law), contained an explicit representation and warranty that the guarantors would not assert that the Guaranty or any transaction contemplated thereby violated any applicable law or governmental regulation.

34.   Upon information and belief, the McCorriston Firm was counsel to the guarantors when the Guaranty was entered into in 2006 and upon further information and belief, directed and/or participated in the decision to have the guarantors assert the Kida defense notwithstanding their knowledge of the representation and warranty in the Guaranty, which representation and warranty are fully effective under governing New York law.

35.   Both the Hawaii action and the New York action continue as of this date, and Plaintiffs have paid, or have incurred the obligation to pay, in excess of $675,000 in legal fees and related expenses as a consequence.  Further, if the legal position asserted by PMP II *et al* through the McCorriston Firm is sustained, Plaintiffs could lose some or all of the amounts they were entitled to be repaid under the relevant Loan Documents.

### AS AND FOR A FIRST CAUSE OF ACTION
### <u>UPON WHICH RELIEF MAY BE GRANTED</u>
### (Breach of Fiduciary Duty)

36.    Paragraphs 1 through 35 above are hereby incorporated by reference and reasserted as if set forth in full.

37.    By undertaking the referenced legal representation of BFI and its assignees, Defendants undertook a fiduciary duty of loyalty to them with respect to the subject matter of the Opinion.

38.    Notwithstanding the foregoing, in breach of the duty of loyalty, Defendants have taken on representation of directly adverse parties on a substantially related matter and now seek to have held void the transaction that their Opinion caused Plaintiffs to enter.

39.    While Plaintiffs believe the legal position asserted by PMP II *et al* through the McCorriston Firm is without merit, as a consequence of the breach of the fiduciary duty of loyalty, Plaintiffs have already been forced to incur in excess of $675,000 in legal fees and run the risk of suffering further loss in connection with their Loan.

40.    Defendants should be liable to indemnify and hold Plaintiffs harmless from all such losses.

### AS AND FOR A SECOND CAUSE OF ACTION
### <u>UPON WHICH RELIEF MAY BE GRANTED</u>
### (Professional Malpractice/Negligence)

41.    Paragraphs 1 through 40 above are hereby incorporated by reference and reasserted as if set forth in full.

42.    At the time that Defendants undertook their representation of Plaintiffs, Defendants knew that Plaintiffs were relying upon the skill, integrity and superior knowledge of Defendants with respect to Hawaiian law.

43.   At that time, Defendants knew of the Hawaiian mortgage broker statute and the Kida decision, but they did not disclose this to Plaintiffs.

44.   Defendants knew that such information would be material to any rational lending decision, and that Plaintiffs were likely operating in ignorance thereof.

45.   The failure by Defendants to make disclosure of the Hawaii mortgage broker statute and the Kida issue in the circumstances constituted fraud and/or fraudulent concealment and Plaintiffs relied upon the fraud to their detriment.

46.   Accordingly, Defendants should be required to indemnify Plaintiffs for all out-of-pocket losses suffered by their justifiable reliance upon Defendants' fraud and/or fraudulent concealment.

## AS AND FOR A THIRD CAUSE OF ACTION
## UPON WHICH RELIEF MAY BE GRANTED
### (Fraud)

47.   Paragraphs 1 through 46 above are hereby incorporated by reference and reasserted as if set forth in full.

48.   In the alternative, Defendants' failure to disclose the existence of the Hawaiian mortgage broker statute and Kida and its potential impact upon the Loan, and its rendering of an opinion that it knew would be relied upon for Plaintiffs to close the Loan transaction that did not make reference to the foregoing, constitutes conduct falling below applicable professional standards and, therefore, constitutes malpractice.

49.   Such malpractice is the proximate cause of the damages that Plaintiffs have already suffered, and any damages that they will suffer in the event the legal position asserted through the McCorriston Firm were to prevail,  Defendants should be required to indemnify Plaintiffs for the losses they have already sustained or will sustain as the result of Defendants' malpractice.

## AS AND FOR A FOURTH CAUSE OF ACTION
## UPON WHICH RELIEF MAY BE GRANTED
### (Tortious Interference with Contract)

50.    Paragraphs 1 through 49 above are hereby incorporated by reference and reasserted as if set forth in full.

51.    The assertion by the defendant guarantors in the New York action that the Guaranty and/or the underlying Loan Documents are void or unenforceable by reason of the Hawaiian mortgage broker statute was done in direct violation of Paragraphs 15 and 21 of the Guaranty.

52.    Upon information and belief, the McCorriston Firm, and McCorriston individually, had actual knowledge of this requirement having been counsel to the guarantors, and in the case of McCorriston individually, a member (through being a member in Moki Mac) of BagelPipe.

53.    Upon information and belief, the determination to breach the relevant provisions of the Guaranty was induced, or participated in, by the McCorriston Firm and McCorriston, and but for their inducing and/or participating in said breach, the breach would not have occurred.

54.    Defendants are liable to Plaintiffs for all damages proximately caused by, or that will be caused by, their inducing or participating in the guarantors' breach of contract.

WHEREFORE, Plaintiffs demand judgment as follows:

a)  Damages for costs thus far incurred by Plaintiffs as a result of Defendants' tortious conduct, together with an award of such other damages as may ultimately be sustained if the Loan, Loan Documents, or Guaranty are declared in any way invalid or unenforceable;

b)  On Plaintiffs' First, Second and Fourth Causes of Action, punitive damages in an amount to be set by the Court;

c)  Interest and costs; and

d)  Such other and further relief as to the Court may seem just and proper.

Dated:  New York, New York
        December 14, 2009

Respectfully submitted,

REED SMITH LLP

By:_____
                    Lance Gotthoffer
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
Fax (212) 521-5450

*Attorneys for Plaintiffs*

# McCorriston Miller Mukai MacKinnon LLP

### ATTORNEYS AT LAW

February 9, 2006

BFI Capital, LLC
50 Main Street, Suite 1000
White Plains, New York 10606
Attention: Mr. Lawrence I. Linksman

> Re:    Lender:  BFI Capital, LLC
>        Borrower:  PMP II, LLC
>        <u>Loan in the amount of $18,500,000 (the "Loan")</u>

Dear Mr. Linksman:

We have acted as special counsel for PMP II, LLC, a Delaware limited liability company (the "<u>Borrower</u>"), in connection with a loan made by BFI Capital, a Delaware limited liability company ("<u>Holder</u>"), to Borrower in the principal amount of $18,500,000 (the "<u>Loan</u>").

This Opinion Letter is governed by, and shall be interpreted in accordance with, the Legal Opinion Accord (1991) of the American Bar Association Section of Business Law, as modified by the Report of the Section of Real Property, Probate & Trust Law of the American Bar Association and the American College of Real Estate Lawyers, and as further modified by the Hawaii 2000 Report Regarding Lawyers' Opinion Letters in Mortgage Loan Transactions of the Opinion Committee of the Real Property and Financial Services Section of the Hawaii State Bar Association (such Legal Opinion Accord, as so modified, being referred to herein as the "<u>Accord</u>"). As a consequence, and in addition to the qualifications, assumptions, exceptions and limitations set forth in this letter, this Opinion Letter is subject to a number of qualifications, assumptions, exceptions, definitions, limitations on coverage and other limitations, all, as more particularly described in the Accord, and this Opinion Letter should be read in conjunction therewith.

The law covered by the opinions expressed herein is limited to the laws of the State of Hawaii (sometimes alternatively referred to herein as the "<u>State</u>"), and therefore the term "Opining Jurisdiction" as used in the Accord shall be deemed to be the State of Hawaii. Except as otherwise indicated herein, capitalized terms used in this Opinion Letter shall have the meanings ascribed to such terms in the Loan Documents (as hereinafter defined) or the Accord, as applicable.

For purposes of rendering our opinion set forth herein, we have reviewed a copy of the following documents which pertain directly to the Loan (collectively, the "<u>Loan Documents</u>"):

BFI Capital, LLC
February 9, 2006
Page 2

1.  Promissory Note dated February 9, 2006, made in the principal amount of $16,650,000.00 by Borrower, as the "Borrower" therein, in favor of Holder, as the "Lender" therein.

2.  Promissory Note dated February 9, 2006, made in the principal amount of $1,850,000.00 by Borrower, as the "Borrower" therein, in favor of Holder, as the "Lender" therein.

3.  Mortgage and Security Agreement dated February 9, 2006, made by Borrower, as the "Mortgagor" therein, in favor of Holder, as the "Mortgagee" therein, (the "Mortgage") covering that certain parcel of land being Lot B-1 – "Kamilonui 2" Subdivision – Royal Patent Number 4475 – Land Commission Award 7713, Apana 30 to Victoria Kamamalu, City and County of Honolulu, State of Hawaii (the "Property"), securing the repayment of the Promissory Notes described in paragraphs 1 and 2 hereinabove (collectively, the "Notes").

4.  Absolute Assignment of Leases and Rents for the premises referred to in Paragraph 1 above, dated February 9, 2006, made by the Borrower, as the "Owner" therein, in favor of Holder, as the "Lender" therein (the "Assignment"), securing the repayment of the Notes.

5.  A form of UCC Financing Statement made by Borrower, as Debtor, in favor of Holder, as Secured Party (the "Financing Statement").

6.  Limited Guaranty of Payment dated as of February 9, 2006, made by PRM Realty Group, LLC, an Illinois limited liability company ("PRM"), Bagelpipe, LLC, a Hawaii limited liability company ("Bagelpipe"), RCCI Management, LLC, a Delaware limited liability company ("RCCI"), Peter R. Morris ("Morris"), and John Henry Felix ("Felix") in favor of Holder (the "Guaranty").

7.  Environmental Indemnification Agreement dated February 9, 2006, made by Borrower PRM, Bagelpipe, RCCI and Felix, jointly and severally, in favor of Holder.

8.  Security Agreement dated February 9, 2006, executed by Borrower, as the "Debtor" therein, and Holder, as the "Secured Party" therein.

9.  Security Agreement dated February 9, 2006, executed by PRM, as the "Debtor" therein, in favor of Holder, as the "Secured Party" therein.

10. Security Agreement dated February 9, 2006, executed by Bagelpipe, as the "Debtor" therein, in favor of Holder, as the "Secured Party" therein.

BFI Capital, LLC
February 9, 2006
Page 3

11.  Mortgagor's Affidavit of Title dated February 9, 2006, executed by Borrower.

12.  Undertaking and Errors and Omissions Form dated February 9, 2006, executed by Morris, Felix, PRM, Bagelpipe and RCCI.

13.  Member's and/or Managers Certificate of Borrower, Morris, Felix, PRM, Bagelpipe and RCCI.

14.  Estoppel Certificate dated February 9, 2006, made by Borrower in favor of Holder.

For purposes of rendering the opinion set forth hereinbelow, we have also examined originals or copies of the following documents relating to Borrower (collectively, the "Authority Documents"):

(A)  The Articles of Organization, Operating Agreement, Good Standing Certificate and related organizational documents for Borrower.

(B)  Borrower's resolution authorizing the Loan dated January 12, 2006.

(C)  Opinion of Nancy J. Cass, in house counsel to Borrower, dated February 9, 2006 (the "Cass Opinion").

(D)  Opinion of Steven R. Tanenbaum of the law firm of Solomon & Tanenbaum P.C., special counsel to Borrower, dated February 9, 2006.

Further, we have examined originals or copies of the following documents with respect to the parties indicated:

(1)  Regarding Bagelpipe (collectively, "Bagelpipe Authority Documents"):

(a)  Articles of Organization of Bagelpipe dated December 1, 2005

(b)  Limited Liability Company Agreement of Bagelpipe dated as of February 1, 2006.

(2)  Regarding RCCI (collectively, "RCCI Authority Documents"):

(a)  Certificate of Formation of RCCI dated July 24, 2001.

(b)  Limited Liability Company Operating Agreement of RCCI dated July 24, 2001.

(c)  Certificate of Good Standing for RCCI dated December 8, 2005.

BFI Capital, LLC
February 9, 2006
Page 4

    (d)    Articles of Incorporation for Royal Contracting Co., Ltd, a Hawaii corporation ("Royal"), member of RCCI, dated February 11, 19611

    (e)    By-laws of Royal, undated.

    (f)    Certificate of Good Standing for Royal dated January 12, 2006.

    (g)    Resolution of RCCI Management, LLC dated January 11, 2006.

In addition to the Loan Documents and Authority Documents, we have reviewed originals or copies of Preliminary Report dated September 23, 2005, covering the Property (the "Title Report").

For purposes of the opinions expressed below, we have assumed that all natural persons executing the Loan Documents have the legal capacity to do so; that all signatures on all documents submitted to us are genuine (other than those of the Borrower); that all documents submitted to us as originals are authentic; and that all documents submitted to us as certified copies or photocopies conform to the originals of such documents, which themselves are authentic. We also assume that the persons signing the Loan Documents on behalf of the Holder are legally competent and authorized to execute, deliver and cause the Holder to perform the Loan Documents to which they are a party in their individual and corporate capacity.

Based solely upon our examination of the Loan Documents and the Authority Documents, and subject to the qualifications herein set forth, we are of the opinion that:

    (1)    There is no provision in any of the Authority Documents and there is no provision or term:

        (a)    of any mortgage, indenture, lease or agreement encumbering the Property; or

        (b)    to our knowledge, of any license or permit issued by the City and County of Honolulu or State of Hawaii, or of any judgment, decree or order entered in the Courts of the State of Hawaii or Federal District Court for the District of Hawaii; or

        (c)    of any State of Hawaii statute or City and County of Honolulu ordinance, rule or regulation to which Borrower is subject or bound, that would impair the power of Borrower to enter into and carry out the undertakings required under the Loan Documents.

    (2)    To our knowledge, but without independent verification, no consents, permissions or authorizations are required from any other parties in connection with the execution and delivery by Borrower of the Loan Documents or Bagelpipe, RCCI or Felix of the Guaranty.

BFI Capital, LLC
February 9, 2006
Page 5

(3)     The Mortgage and Assignment are in proper form for recording in the Bureau of Conveyances of the State of Hawaii.  Said Bureau of Conveyances is the only office in the State of Hawaii in which the Mortgage is required to be recorded in order to perfect a mortgage lien against the Property, and the only office in which the Assignment may be recorded.

(4)     Subject to the qualification contained in this paragraph (4) hereinbelow, (i) the Mortgage contains provisions such as to render the rights and remedies of Holder adequate for the realization against the Property of the benefits of the security described in the Mortgage, and (ii) the Assignment contains provisions adequate for the realization against the property described in the Assignment of the benefits of the security described therein.

Notwithstanding anything contained in this paragraph (4) hereinabove, with respect to the enforceability of the provisions in the Loan Documents relating to conflicts of law, consent to jurisdiction, choice of forum or choice of law, we advise you of the following:

The Hawaii Supreme Court has held, with respect to contracts generally, that when the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, the chosen law will generally be applied. *See Airgo, Inc. v. Horizon Cargo Transport, Inc.*, 66 Haw. 590, 595, 670 P.2d 1277, 1281 (1983). Similarly, the Hawaii UCC provides generally that the parties to a transaction can agree that the law of a particular state shall govern their rights and duties where the transaction bears a reasonable relationship to that state. Hawaii Revised Statute ("H.R.S.") §§ 490:1-105. There are, however, several exceptions to these general rules.

First, real property is exclusively subject to the law of the state within which it is situated, and therefore, "all matters concerning taxation of such realty, title, alienation, and the transfer of such realty and the validity, effect, and construction which is to be accorded agreements intending to convey or otherwise deal with such realty are determined by the doctrine of *lex loci rei sitae,* that is; the law of the place where the land is located." *Grayco Land Escrow, Ltd.,* 57 Haw. 436, 450, 559 P.2d 264, 274 (1977).

Second, the Hawaii UCC mandates the application of the law of a certain state to determine perfection, the effect of perfection or nonperfection, and the priority of a security interest in certain collateral covered by the Loan Documents. *See* H.R.S. §§ 490:1-105 and 9-103.

Third, the Restatement (Second) Conflict of Laws (the "Restatement") provides that an otherwise effective choice of law provision in a contract

BFI Capital, LLC
February 9, 2006
Page 6

will not be given effect if the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Section 188 [relating to most significant contacts], would be the state of applicable law in the absence of an effective choice of law by the parties." Restatement (Second) Conflict of Laws, § 187(2)(b). *See also* Restatement § 203, comments e and f (applying this rule in modified form to usury laws). Hawaii courts look to the Restatement for guidance regarding conflict of laws issues. *See UARCO Inc., v. Lam,* 18 F.Supp.2d 1116 (D.Haw. 1998); *California Fed. Sav. & Loan v. Bell,* 6 Haw. App. 597, 735 P.2d 499 (1987).

We also point out that an otherwise valid choice of law provision may be deemed waived by the conduct of the parties. *See Touche Ross Ltd. v. Filipek,* 7 Haw. App. 473, 479, 778 P.2d 721, 726 (1989) (parties held to have waived choice of law provision selecting Canadian law as the governing law where parties relied on Hawaii statutes and case law in course of litigation).

Given the above, if a Hawaii court were to apply Hawaii law instead of New York law, our opinion set forth in the first paragraph of this Section 4 would remain unchanged, and the other Loan Documents would be enforceable under Hawaii law in accordance with their respective terms.

    (5)    The Financing Statement is in proper form for filing in the Bureau of Conveyances of the State of Hawaii. Said Bureau is in the only office of the State of Hawaii in which the UCC-1 is required to be filed in order to perfect the security interests therein described under the Hawaii Uniform Commercial Code (the "Hawaii UCC"). Upon proper filing and recording of the Hawaii UCC, Holder shall have good, valid and perfected security interests in the collateral described in the Security Instruments.

    (6)    We have not been made aware by Borrower of any violations of environmental or conservation laws, ordinances, rules or regulation at the Property.

    (7)    Based solely on a review of the Title Report and the Mortgagor's Affidavit of Title dated February 9, 2006, executed by the Borrower, there are no outstanding judgments against Borrower or any judicial actions pending against Borrower.

    (8)    The amounts to be received by Holder as interest payments under the Notes will constitute lawful interest and will be neither usurious nor illegal under the laws of the State of Hawaii.

BFI Capital, LLC
February 9, 2006
Page 7

    (9)    Based solely on a Certificate of Authority issued on January 26, 2006, PMP is authorized to do business in the State of Hawaii.

    In addition, subject to the qualifications herein set forth, we are of the opinion that:

    (i)    Bagelpipe, based solely on the Bagelpipe Authority Documents, has all requisite power and authority to execute and deliver the Guaranty and to carry out the transactions contemplated thereby and the covenants and agreements contained therein.

    (ii)    PRM, based solely on the Cass Opinion, has all requisite power and authority to execute the Guaranty on behalf of Bagelpipe.

    (iii)    RCCI, based solely on the RCCI Authority Documents, has all requisite power and authority to execute and deliver the Guaranty and to carry out the transactions contemplated thereby and the covenants and agreements contained therein, and the individual executing the Guaranty on behalf of RCCI has been duly authorized and empowered to do so.

    (iv)    Felix is of legal age and is not under any legal disability or duress.

    (v)    To our knowledge, there are (x) no outstanding judgments against Bagelpipe, and (y) no judicial actions pending or threatened against Bagelpipe.

    The opinions set forth above are subject to: (A) applicable bankruptcy, insolvency, reorganization, fraudulent transfer, fraudulent conveyance, moratorium or similar laws from time to time in effect affecting creditors' rights generally; and (B) general principles of equity (including, without limitation, standards of materiality, good faith, fair dealing and reasonableness), whether in a proceeding at law or in equity. We note that, in applying general principles of equity, a court may decline to grant specific performance and other equitable remedies, and may decline to enforce the rights of the Holder in connection with a default or breach of a representation, warranty or covenant if such rights were to be invoked in the context of a default or breach that is immaterial, or in the context of fraud or exploitative overreaching by the Holder, or unconscionable conduct by the Holder to exploit a technical breach. Moreover, any provisions of the Loan Documents that permit the Holder to take actions or make determinations may be subject to requirements that such actions be taken and such determinations be made on a reasonable basis and in good faith.

    The opinions expressed in this letter are made subject to and are qualified by the following:

    (A)    The opinions expressed herein are subject to the General Qualifications set forth in the Accord; in other words, the Bankruptcy and Insolvency Exception, the Equitable Principles Limitation and any Other Common Qualifications that apply to the particular opinion in question.

128544.6
2/8/06 5:28 PM

BFI Capital, LLC
February 9, 2006
Page 8

(B)     All of the Loan Documents to be filed and/or recorded have been or will be timely and correctly filed and/or recorded in or with the appropriate office for the same and all mortgage taxes and other taxes and recording or filing fees due and owing in connection with the Loan or the execution, delivery and/or recordation of any documents will be timely and fully paid.  Specifically, we assume that the Mortgage, Assignment and Financing Statement will be recorded in the Bureau of Conveyances of the State of Hawaii.

(C)     We understand that with respect to title matters, the Holder will be relying upon a policy of title insurance to be issued to the Lender by a title insurance company satisfactory to Holder, and in rendering the opinions expressed in this Opinion Letter, we have made no examination of, and express no opinion with respect to, (i) the existence of, state of title to, or descriptions of, any of the Property, whether real or personal, (ii) the nature or extent of the Borrower's rights in, or title to, any of the Property, (iii) the condition, location or ownership of any of the Property, or (iv) the creation, perfection and priority of the liens and security interests granted under the Loan Documents or the existence or non-existence of any other liens, security interests, charges or encumbrances in or on any of the Property.

(D)     With respect to security interests which may be perfected by the filing of financing statements under the Hawaii UCC, we point out that: (i) in order to maintain such perfection, continuation statements must be filed under Section 490:9-515 of the Hawaii UCC within six months prior to the expiration of each five-year period following the filing of the original financing statements to which they relate; (ii) under Sections 490:9-507(c) and 508 of the Hawaii UCC, if the debtor changes its name, identity or corporate structure so as to make the original financings statements seriously misleading, perfection by filing shall terminate as to Collateral acquired more than four months after the change unless appropriate new financing statements indicating the debtor's new name, identity or corporate structure are filed with the Bureau of Conveyances prior to the expiration of such four-month period; (iii) under certain circumstances, a third party may acquire certain items of Collateral free and clear of a security interest under Sections 490:9-320, 490:9-323, and 490:9-330, and 490:9-331 of the Hawaii UCC; and (d) in the case of cash proceeds of Collateral, continuation of perfection is limited to the extent set forth in Section 490:9-315 of the Hawaii UCC.

(E)     No opinion is expressed herein with respect to (i) the enforceability of any provision contained in the Loan Documents to set off and apply deposits of the Borrower to the obligations of Borrower thereunder or as to the enforceability of any waiver of demand, claims or rights of set-off or counterclaim or of any stay or extension laws, (ii) the enforceability of any provision contained in the Loan Documents purporting to establish evidentiary standards, (iii) the enforceability of any provision of any of the Loan Documents providing for premiums, interest on interest, interest after judgment, or the waiver of the applicability of any statutory judgment rate subsequent to the entry of a monetary judgment and/or judgment of foreclosure; or (iv) the validity, binding effect or enforceability of security interests purported to be created by the Documents in any collateral (including any proceeds thereof) which (A) constitute cash or deposit accounts, or (B) are otherwise not subject to the UCC of the State of Hawaii (other than with respect to the Mortgage on the Property.

BFI Capital, LLC
February 9, 2006
Page 9

(F)    We express no opinion on the validity, binding effect or enforceability of provisions of the Loan Documents (i) which waive any rights afforded to any party thereto under any statutory or constitutional provision or applicable law, (ii) which waive broadly or vaguely stated rights or future rights, or waive certain rights, counterclaims or defenses to obligations where such waivers are against statutes, law or public policy, (iii) which waive trial by jury, (iv) that provide that rights or remedies are not exclusive, that every right or remedy is cumulative and may be exercised in addition to or with any other right or remedy or that the election of some remedy or remedies does not preclude recourse to one or more other remedies, (v) that provide that injunctive relief or specific performance may be available as a remedy for breach (because such remedy is subject to the discretion of the court before which a proceeding therefor may be brought), (vi) that purport to prevent oral modification or waivers or (vii) the breach of which a court concludes is not material or does not materially adversely affect the Holder. Notwithstanding the foregoing, the inclusion of provisions of the Loan Documents which may be unenforceable in whole or in part, do not affect the validity of the balance of such Loan Documents, and the practical realization of the benefits created by such Documents taken as a whole will not be materially impaired by the unenforceability of those particular provisions.

(G)    We express no opinion on the validity or enforceability of any provisions of the Loan Documents under which any party thereto disclaims any obligations of good faith, fair dealing, diligence, commercial reasonableness and/or care, or prior notice.

(H)    We express no opinion as to the compliance by the Borrower with applicable laws, regulations, rules, orders or municipal ordinances, including, without limitation, environmental, zoning, subdivision, land use, building, planning, energy or conservation laws, regulations, rules or orders.

(I)    Our opinion is subject to judicial decisions which indicate that public policy may render unenforceable provisions respecting payment of costs and expenses of enforcement, including, without limitation, attorneys' fees.

(J)    Without limiting anything contained in this letter hereinabove, we point out that, in applying general principles of equity, a court may decline to grant specific performance and other equitable remedies, and may decline to enforce the right of the Holder to exercise any remedies in connection with an Event of Default (as defined in the Loan Documents) that is immaterial. Moreover, provisions of the Loan Documents that permit the Holder to take actions or make determinations may be subject to requirements that such actions be taken and such determinations be made on a reasonable basis and in good faith.

(K)    We express no opinion as to any federal, state or local securities, tax or environmental laws, rules or regulations.

(L)    We express no opinion as to the effect of non-compliance by the Holder with any state or federal laws or regulations applicable to the transactions contemplated by the Loan Documents because of the nature of the Holder's business.

128544.6
2/8/06 5:28 PM

BFI Capital, LLC
February 9, 2006
Page 10

      (M)    None of the opinions hereinabove expressed shall in any way be deemed to constitute and/or imply the giving by this law firm of an opinion on the laws of any other jurisdiction other than the laws of the Opining Jurisdiction.

      The phrases "to our knowledge" or "known to us" as used herein with respect to the existence or absence of facts means that no information has come to the attention of the attorneys in our office who have worked on the Borrower's matters during the course of our representation of the Borrower with respect to the Loan, which would give such individuals actual knowledge of the existence or absence of such facts.

      We are qualified to practice law only in the State of Hawaii and do not purport to be experts on, or to express any opinion herein concerning, any laws other than the laws of the State of Hawaii and the federal laws of the United States of America. We have made no independent investigation of the laws of any other jurisdiction.

      The opinions expressed in this letter are given solely for the benefit of Holder, its successors and assigns (including any purchase or participant of the Loan), Capital Source Finance LLC, Granoff, Walker & Forlenza P.C., and Solomon & Tanenbaum P.C. in connection with the transaction referred to herein. The opinions expressed in this letter may not be relied upon by any other person, firm or corporation for any purpose, without our prior written consent.

      The opinions expressed in this letter are rendered as of the date hereof and we express no opinion as to circumstances or events that may occur subsequent to such date.

              Very truly yours,

              McCORRISTON MILLER MUKAI MacKINNON

              Clifford J. Miller

CJM:ja

## LIMITED GUARANTY OF PAYMENT

WHEREAS, PMP II, LLC, a Delaware limited liability company, having an address at c/o PRM Realty Group, LLC, 150 North Wacker Drive, Suite 1120, Chicago, Illinois 60606 (the "Borrower"), has applied to BFI CAPITAL, LLC, a Delaware limited liability company, having an office at 50 Main Street, Suite 1000, White Plains, New York 10606 ("BFI Capital"), for a loan in the total principal sum of up to $18,500,000.00 (the "Loan"), which Loan will be evidenced by two (2) promissory notes in the amounts of up to $16,650,000 and up to $1,850,000 (collectively, the "Note") and secured by the Mortgage, Security Agreement and Financing Statement (the "Mortgage"), all as described and defined in Exhibit A attached hereto;

WHEREAS, BFI Capital is willing to make the Loan to the Borrower only if the undersigned execute and deliver this Guaranty and guarantee payment of the Debt (as herein defined) to BFI Capital (as herein defined) in the manner hereinafter provided;

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, and in order to induce BFI Capital to make the Loan to the Borrower, the undersigned hereby acknowledge, agree and confirm that all of the above recitals are true, correct and complete and hereby covenant and agree with BFI Capital as follows:

1.    (a) The undersigned guarantee, absolutely, irrevocably and unconditionally, to BFI Capital the payment of the Debt. The term "Debt" as used in this Guaranty shall mean all liabilities of the Borrower to BFI Capital of whatever nature, whether now existing or hereafter incurred, whether created directly or acquired by BFI Capital, by assignment or otherwise, whether matured or unmatured and whether absolute or contingent (collectively, the "Payment Obligations"). Notwithstanding the foregoing, but subject to subsections (b) and (c) of this Paragraph 1, the Payment Obligations of Guarantors under this Guaranty shall be limited to the following:

(i)    For PRM Realty Group, LLC - Five Million and 00/100 Dollars ($5,000,000.00); Bagelpipe, LLC - Five Million and 00/100 Dollars ($5,000,000.00); Peter R. Morris - Five Million and 00/100 Dollars ($5,000,000.00); for RCCI Management, LLC - Five Hundred Seventeen Thousand Five Hundred and 00/100 Dollars ($517,500.00); and for John Henry Felix - One Hundred Nineteen Thousand Five Hundred and 00/100 Dollars ($119,500.00), plus

(ii)    all accrued and unpaid interest due under the Note;

(iii)    all reasonable expenses and costs incurred by or on behalf of BFI Capital (including, without limitation, expenses and reasonable attorneys' fees) in enforcing the rights and remedies of BFI Capital under this Guaranty and/or the other loan documents delivered by Borrower in connection with the Loan, the "Loan Documents"), together with all interest calculated at the rate of Default Interest (as defined in the Note) until paid on all amounts owed by Guarantors which accrues from and after Lender's demand for payment is delivered to Guarantors; plus

(iv)    all damages, expenses and costs incurred by BFI Capital as a result of or arising from any of the following:

1. Borrower's failure to comply with any provisions of the Loan Documents which require Borrower or any other obligor to furnish financial reports or records;

2. any material misrepresentation in any of the Loan Documents made without intent to defraud;

3. failure to maintain all insurance required by any of the Loan Documents; or

4. physical waste with respect to any portion of the Property.

(b)    In addition to the liabilities set forth in subsection (a) of this Paragraph 1, Guarantors shall also guarantee and have liability for all additional interest advanced by BFI Capital in order to fund the Interest Reserve during the Option Period (as such terms are defined in the Note.  The extent of the additional liability shall be as follows:

(i)    PRM Realty Group, LLC - One Hundred Percent (100.00%);

(ii)    Bagelpipe, LLC - One Hundred Percent (100.00%);

(iii)    Peter R. Morris - One Hundred Percent (100.00%);

(iv)    RCCI Management, LLC - Ten and 35/100 percent (10.35%); and

(v)    John Henry Felix - Two and 39/100 percent (2.39%).

(c)    Notwithstanding subsection (a) of this Paragraph 1, Guarantors shall have unlimited liability for the payment of the Payment Obligations if any of the following shall occur (the "Full Recourse Events"):

(i)    Borrower, any Affiliate or any Guarantor shall commit fraud or make any intentional material misrepresentation in connection with the execution and the delivery of the Note or the other Loan Documents or in the performance of any of Borrower's or Guarantors' obligations thereunder;

(ii)    Borrower, any Guarantor, or any Affiliate of Borrower or any Guarantor contests, delays or otherwise hinders any action taken by BFI Capital in connection with the appointment of a receiver for the Property (as such term is defined in Exhibit A attached hereto) or the foreclosure of the liens, mortgages or other security interests created by any of the Loan Documents [provided, however, that with respect to each such action brought by BFI Capital, if the highest court hearing such action (whether trial or appellate) determines that a defense raised by Borrower, any Guarantor or an Affiliate of Borrower or any Guarantor in such action is a valid defense to the relief sought by BFI Capital, the contest of such action by Borrower, any Guarantor or such Affiliate shall not constitute a Full Recourse Event; or

(iii)    the Property or any part thereof shall become an asset in (i) a voluntary bankruptcy or insolvency proceeding, or (ii) an involuntary bankruptcy or insolvency proceeding (A) which is commenced by any Guarantor, any other Affiliate or any accountant, attorney or other representative of Borrower, any Guarantor or any

other Affiliate (collectively, the "Borrowing Group"), or (B) in which any member of the Borrowing Group objects to a motion by BFI Capital for relief from any stay or injunction from any other remedial action permitted hereunder or under the Note or the other Loan Documents; or

      (iv)    the Property or any part thereof is sold, conveyed, mortgaged, granted, bargained, encumbered, pledged, assigned, or otherwise transferred or permit the Property or any part thereof to be sold, conveyed, mortgaged, granted, bargained, encumbered, pledged, assigned, or otherwise transferred. A sale, conveyance, mortgage, grant, bargain, encumbrance, pledge, assignment, or transfer within the meaning of this Paragraph 1(b) shall be deemed to include, but not limited to, (a) an

installment sales agreement wherein Borrower agrees to sell the Property or any part thereof for a price to be paid in installments; (b) an agreement by Borrower leasing all or a substantial part of the Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Borrower's right, title and interest in and to any leases or any rents (except for BFI Capital); and (c) except as set forth in Section 7.3 of the Mortgage, if Borrower, any Guarantor or any general or limited partner or member of Mortgagor or any Guarantor is a limited liability company, the change, removal or resignation of a managing member or the transfer of the membership interest of any managing member or any profits or proceeds relating to such membership interest or the voluntary or involuntary sale, conveyance, transfer or pledge of membership interests (or the membership interests of any limited liability company directly or indirectly controlling such limited liability company by operation of law or otherwise) or the creation or issuance of new membership interests. Notwithstanding the foregoing, the following transfer shall not be deemed to be a sale, conveyance, mortgage, grant, bargain, encumbrance, pledge, assignment, or transfer within the meaning of this Paragraph 2(b)(iv): a transfer by devise or descent or by operation of law upon the death of a member, partner or stockholder of Borrower, or of any Guarantor or any member thereof.

      (d)    Notwithstanding anything contained in this Guaranty to the contrary, in the event BFI Capital exercises any of its remedies available pursuant to this Guaranty or the Loan Documents against Borrower or any of the undersigned and, after the disposition of the collateral security for the payment of the Debt, by sale or otherwise, a portion of the Debt remains outstanding and due and payable to BFI Capital, PRM Realty Group, LLC, Bagelpipe, LLC and Peter Morris agree that they shall have additional liability (over and above the amounts set forth in paragraphs 1(a) and (b) above) pursuant to this Guaranty in an amount not to exceed $2,000,000.

      (e)    Only payments made to BFI Capital by the undersigned out of their personal funds not derived from the Property after demand therefor by BFI Capital shall be applied against the undersigneds' liability hereunder except, and only to the extent that, any payments made by Borrower reduce the obligations of the Borrower below the maximum amount of the Payment Obligations. Furthermore, the foregoing limitations on the Payment Obligations shall not limit in any way the liability of the undersigned pursuant to or arising from any of the other covenants, representations, warranties or other provisions hereof, other than the liability of the any of the undersigned arising from the Payment Obligations contained in this Paragraph 1, nor shall such limitation limit the liability of any of the undersigned that may arise out of the obligations set forth in the Environmental Indemnity Agreement of even date herewith made by

the undersigned and Borrower in favor of Lender or any other agreement of the undersigned providing for personal liability to Lender.

2.      The undersigned agree that the undersigned shall indemnify and hold BFI Capital harmless and defend BFI Capital at the undersigned's sole cost and expense against any loss or liability, cost or expense (including, but not limited to, reasonable attorneys' fees and disbursements of BFI Capital 's counsel, whether in-house staff, retained firms or otherwise), and all claims, actions, procedures and suits arising out of or in connection with:

(a)      any ongoing matters arising out of the transaction contemplated hereby, this Guaranty, the Debt, the Mortgage, the Note or any other Loan Document, including, but not limited to, all costs of appraisals and reappraisals of the property encumbered by the Mortgage or any part thereof;

(b)      any amendment to, or restructuring of, this Guaranty, the Debt and the Mortgage, the Note or any of the other Loan Documents; and

(c)      any and all lawful action that may be taken by BFI Capital in connection with the enforcement of the provisions of this Guaranty, the Note, the Mortgage or any of the documents executed or delivered in connection therewith (collectively, this Guaranty, the Note, the Mortgage and Security Agreement and such other documents are the "Loan Documents"), whether or not suit is filed in connection with the same, or in connection with the undersigned, the Borrower and/or any partner, joint venturer or shareholder becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding.

All sums expended by BFI Capital shall be payable on demand and, until reimbursed by the Borrower or by the undersigned pursuant hereto, shall bear interest at the default interest rate as set forth in the Note.

3.      The undersigned hereby represents and warrants that all income tax returns and other financial information of the undersigned heretofore delivered to BFI Capital by or on behalf of the undersigned are true and correct in all material respects, and no material adverse change has occurred in the financial conditions reflected therein since the respective dates thereof. In addition, the undersigned covenants that so long as any portion of the Debt remains outstanding and unpaid, the undersigned will, unless otherwise consented to in writing by BFI Capital, furnish to BFI Capital, within twenty (20) days after request, such detailed financial and other information as may be requested by BFI Capital with respect to the undersigned, or any affiliate of, or entity controlled by the undersigned.

4.      In addition to any right available to BFI Capital under applicable law or any other agreement, the undersigned hereby gives to BFI Capital a continuing lien on, security interest in and right of set-off against all moneys, securities and other property of the undersigned and the proceeds thereof, now on deposit or now or hereafter delivered, remaining with or in transit in any manner to BFI Capital, its correspondents, participants or its agents from or for the undersigned, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into possession of BFI Capital in any way, and also, any balance of any deposit account and credits of the undersigned with, and any and all claims of the undersigned against, BFI Capital at any time existing, as collateral security for the payment of the Debt and all of the other obligations of the undersigned under this Guaranty, including fees, contracted with or acquired by BFI Capital, whether joint, several, absolute, contingent, secured, matured or unmatured (for the purposes of this paragraph 4 and paragraphs 6, 8 and 16 below, collectively, the

4

"Liabilities"), hereby authorizing BFI Capital at any time or times, without prior notice, to apply such balances, credits or claims, or any part thereof, to such Liabilities in such amounts as it may select, whether contingent, unmatured or otherwise and whether any collateral security therefore is deemed adequate or not. The collateral security described herein shall be in addition to any collateral security described in any separate agreement executed by the undersigned. BFI Capital, in addition to any right available to it under applicable law or any other agreement, shall have the right, at its option, to immediately set off against any Liabilities all monies owed by BFI Capital in any capacity to the undersigned, whether or not due, and BFI Capital shall, at its option, be deemed to have exercised such right to set off and to have made a charge against any such money immediately upon the occurrence of any events of default set forth below, even though such charge is made or entered on the books of BFI Capital subsequent to those events.

5.      All moneys available to BFI Capital for application in payment or reduction of the Debt may be applied by BFI Capital in such manner and in such amounts and at such time or times and in such order, priority and proportions as BFI Capital may see fit to the payment or reduction of such portion of the Debt as BFI Capital may elect.

6.      The undersigned hereby expressly agree that this Guaranty is independent of, and in addition to, all collateral granted, pledged or assigned under the Loan Documents, and the undersigned hereby consent that from time to time, before or after any default by the Borrower, with or without further notice to or assent from the undersigned:

(a)      any security at any time held by or available to BFI Capital for any obligation of the Borrower, or any security at any time held by or available to BFI Capital for any obligation, from this date forward, of any other person or party primarily, secondarily or otherwise liable for all or any portion of the Debt, any other Liabilities and/or any other obligations of the Borrower or any other person or party, other than BFI Capital, under any of the Loan Documents ("Other Obligations"), including any guarantor of the Debt and/or any of such Other Obligations, may be accelerated, settled, exchanged, surrendered or released and BFI Capital may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of the Borrower, or of any such other person or party;

(b)      any obligation of the Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, accelerated, surrendered, compromised, settled, waived or released in whole or in part, or any default with respect thereto waived; and

(c)      BFI Capital may extend further credit in any manner whatsoever to the Borrower, and generally deal with the Borrower or any of the above-mentioned security, deposit account, credit on its books or other person or party as BFI Capital may see fit;

and the undersigned shall remain bound in all respects under this Guaranty, without any loss of any rights by BFI Capital and without affecting the liability of the undersigned, notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing. In addition, all moneys available to BFI Capital for application in payment or reduction of the Debt and/or any Other Obligations may be applied by BFI Capital in such manner and in such amounts and at such time or times and in such order, priority and proportions as BFI Capital may see fit.

7.     The undersigned hereby waive:

(a)     notice of acceptance of this Guaranty and of the making of the Loan or any advance thereof by BFI Capital to the Borrower;

(b)     presentment and demand for payment of the Debt or any portion thereof;

(c)     protest and notice of dishonor or default to the undersigned or to any other person or party with respect to the Debt or any portion thereof;

(d)     all other notices to which the undersigned might otherwise be entitled; and

(e)     any demand under this Guaranty.

8.     If any of the following events should occur:

(a)     default under any of the Loan Documents and its continuance beyond any applicable notice and/or grace periods therein contained;

(b)     the undersigned violate any provision of this Guaranty;

(c)     the undersigned terminate or dissolve or suspend their usual business activities or convey, sell, lease, transfer or otherwise dispose of all or a substantial part of their property, business or assets other than in the ordinary course of business;

then, and in such event, BFI Capital may declare the Liabilities to be, and the same shall become, immediately due and payable.

9.     THE UNDERSIGNED SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE DEFAULT RATE OF INTEREST REFERRED TO IN THE AGREEMENT AND AS CONTRACTED BY THE PARTIES SHALL SURVIVE THE ENTRY OF ANY MONETARY JUDGMENT AND/OR JUDGMENT OF FORECLOSURE, AS APPLICABLE.  THE DEFAULT RATE OF INTEREST SHALL BE IMPOSED AND CONTINUE TO ACCRUE UNTIL SUCH TIME AS ANY MONETARY JUDGMENT AND/OR JUDGMENT OF FORECLOSURE, ENTERED IN CONNECTION WITH THE UNDERLYING DEBT HAS BEEN PAID AND SATISFIED IN FULL.

AS SUCH, THE STATUTORY JUDGMENT INTEREST RATE SET FORTH IN CPLR SECTION 5004 OR ANY OTHER RELEVANT CIVIL STATUTE IS INAPPLICABLE, RATHER THE DEFAULT RATE OF INTEREST REFERRED TO IN THE AGREEMENT SHALL REMAIN IN EFFECT AND BE IMPOSED SUBSEQUENT TO THE ENTRY OF ANY MONETARY JUDGMENT AND/OR JUDGMENT OF FORECLOSURE.

THE UNDERSIGNED FURTHER SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE APPLICABILITY OF THE DEFAULT RATE OF INTEREST, PURSUANT TO THE AGREEMENT AND AS CONTRACTED BY THE PARTIES, SUBSEQUENT TO THE ENTRY OF ANY MONETARY JUDGMENT AND/OR JUDGMENT OF FORECLOSURE, IS A DIRECT INDUCEMENT AND CONSIDERATION FOR THE LENDER ENTERING INTO THE AGREEMENT.  THE UNDERSIGNED HAVE KNOWINGLY WAIVED THE APPLICABILITY OF THE STATUTORY JUDGMENT RATE SET FORTH IN CPLR SECTION 5004 OR ANY

OTHER RELEVANT CIVIL STATUTE, SUBSEQUENT TO THE ENTRY OF A MONETARY JUDGMENT AND/OR JUDGMENT OF FORECLOSURE.

10.     This is a guaranty of payment and not of collection and the undersigned further waives any right to require that any action be brought against the Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of BFI Capital in favor of the Borrower or any other person or party. Any payment on account of or re-acknowledgment of the Debt by the Borrower, or any other party liable therefor, shall be deemed to be made on behalf of the undersigned and shall serve to start anew the statutory period of limitations applicable to the Debt.

11.     Each reference herein to BFI Capital shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the undersigned shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the undersigned, all of whom shall be bound by the provisions of this Guaranty, provided, however, that the undersigned shall in no event nor under any circumstance have the right, without obtaining the prior written consent of BFI Capital, to assign or transfer the undersigned's obligations and liabilities under this Guaranty, in whole or in part, to any other person, party or entity.

12.     The term "undersigned" as used herein shall, if this Guaranty is signed by more than one party, unless otherwise stated herein, mean the undersigned and each of them and each undertaking herein contained shall be their joint and several undertaking. If any party hereto shall be a partnership, the agreements and obligations on the part of the undersigned herein contained shall remain in force and application notwithstanding any changes in the individuals composing the partnership and the term "undersigned" shall include any altered or successive partnerships, but the predecessor partnerships and their partners shall not thereby be released from any obligations or liability hereunder. If any party hereto shall be a corporation, the agreements and obligations on the part of the undersigned herein contained shall remain in force and application notwithstanding the merger, consolidation, reorganization or absorption thereof, and the term "undersigned" shall include such new entity, but the old entity shall not thereby be released from any obligations or liabilities hereunder.

13.     No delay on the part of BFI Capital in exercising any right or remedy under this Guaranty or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on the undersigned shall be deemed to be a waiver of the obligations of the undersigned or of the right of BFI Capital to take further action without notice or demand as provided in this Guaranty. No course of dealing between the undersigned and BFI Capital shall change, modify or discharge, in whole or in part, this Guaranty or any obligations of the undersigned hereunder.

14.     This Guaranty may only be modified, amended, changed or terminated by an agreement in writing signed by BFI Capital and the undersigned. No waiver of any term, covenant or provision of this Guaranty shall be effective unless given in writing by BFI Capital and if so given by BFI Capital shall only be effective in the specific instance in which given. The execution and delivery hereafter to BFI Capital by the undersigned of a new instrument of guaranty or any reaffirmation of guaranty, of whatever nature, shall not terminate, supersede or cancel this instrument, unless expressly so provided therein, and all rights and remedies of BFI Capital hereunder or under any instrument of guaranty hereafter executed and delivered to BFI Capital by the undersigned shall be cumulative and may be exercised singly or concurrently.

15.     The undersigned acknowledge that this Guaranty and the undersigned's obligations under this Guaranty are and shall at all times continue to be absolute, irrevocable and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Guaranty and the obligations of the undersigned under this Guaranty or the obligations of any other person or party (including, without limitation, the Borrower) relating to this Guaranty or the obligations of the undersigned hereunder or otherwise with respect to the Debt, including, but not limited to, a foreclosure of the Mortgage or the realization upon any other collateral given, pledged or assigned as security for all or any portion of the Debt, or the filing of a petition under Title 11 of the United States Code with regard to the Borrower or the undersigned, or the commencement of an action or proceeding for the benefit of the creditors of the Borrower or the undersigned, or the obtaining by BFI Capital of title to, respectively, the premises encumbered by the Mortgage or any other collateral given, pledged or assigned as security for the Debt by reason of the foreclosure or enforcement of the Mortgage or any other pledge or security agreement, the acceptance of a deed or assignment in lieu of foreclosure or sale, or otherwise. This Guaranty sets forth the entire agreement and understanding of BFI Capital and the undersigned with respect to the matters covered by this Guaranty and the undersigned acknowledge that no oral or other agreements, understandings, representations or warranties exist with respect to this Guaranty or with respect to the obligations of the undersigned under this Guaranty, except those specifically set forth in this Guaranty.

16.     This Guaranty has been validly authorized, executed and delivered by the undersigned. The undersigned represents and warrants to BFI Capital that it has the power to do so and to perform its obligations under this Guaranty and this Guaranty constitute the legally binding obligation of the undersigned fully enforceable against the undersigned in accordance with the terms hereof. The undersigned further represent and warrant to BFI Capital that:

(a)     neither the execution and delivery of this Guaranty nor the consummation of the transactions contemplated hereby nor compliance with the terms and provisions hereof will violate any applicable provision of law or any applicable regulation or other manifestation of governmental action; and

(b)     all necessary approvals, consents, licenses, registrations and validations of any governmental regulatory body, including, without limitation, approvals required to permit the undersigned to execute and carry out the provisions of this Guaranty, for the validity of the obligations of the undersigned hereunder and for the making of any payment or remittance of any funds required to be made by the undersigned under this Guaranty, have been obtained and are in full force and effect.

17.     Notwithstanding any payments made by the undersigned pursuant to the provisions of this Guaranty, the undersigned irrevocably waive all rights to enforce or collect upon any rights which it now has or may acquire against the Borrower either by way of subrogation, indemnity, reimbursement or contribution for any amount paid under this Guaranty or by way of any other obligations whatsoever of the Borrower to the undersigned, nor shall the undersigned file, assert or receive payment on any claim, whether now existing or hereafter arising, against the Borrower in the event of the commencement of a case by or against the Borrower under Title 11 of the United States Code. In the event either a petition is filed under said Title 11 of the United States Code with regard to the Borrower or the commencement of an action or proceeding for the benefit of the creditors of the Borrower, this Guaranty shall at all times thereafter remain effective in regard to any payments or other transfers of assets to BFI

8

Capital received from or on behalf of the Borrower prior to notice of termination of this Guaranty and which are or may be held voidable on the grounds of preference or fraud, whether or not the Debt has been paid in full. The provisions of this paragraph 17 shall survive the term of this Guaranty and the payment in full of the Debt and all other Liabilities.

   18. Any notice, request or demand given or made under this Guaranty shall be in writing and shall be hand delivered or sent by Federal Express or other reputable courier service or by postage prepaid registered or certified mail, return receipt requested, and shall be deemed given (a) when received at the following addresses if hand delivered or if sent by Federal Express or other reputable courier service, and (b) three (3) business days after being postmarked and addressed as follows if sent by registered or certified mail, return receipt requested:

| | |
|---|---|
| If to BFI Capital: | BFI Capital, LLC<br>50 Main Street, Suite 1000<br>White Plains, New York 10606<br>Attn: Lawrence I. Linksman |
| With a copy to: | Granoff, Walker & Forlenza, P.C.<br>747 Third Avenue, Suite 4C<br>New York, New York 10017<br>Attention: Ellen M. Walker, Esq. |
| If to the undersigned: | PRM Realty Group, LLC<br>150 North Wacker Drive, Suite 1120<br>Chicago, Illinois 60606<br>Attention: Peter R. Morris |
| | Bagelpipe, LLC<br>c/o PRM Realty Group, LLC<br>150 North Wacker Drive, Suite 1120<br>Chicago, Illinois 60606<br>Attention: Peter R. Morris |
| | RCCI Management, LLC<br>677 Ahua Street<br>Honolulu, Hawaii 96819<br>Attention: David Hulihee, Its Manager |
| | Peter R. Morris<br>800 North Michigan Avenue #4803<br>Chicago, Illinois 60611 |
| | John Henry Felix<br>P.O. Box 240778<br>Honolulu, Hawaii 96824 |
| With a copy to: | PRM Realty Group, LLC<br>150 North Wacker Drive, Suite 1120<br>Chicago, Illinois 60606<br>Attention: Nancy J. Cass, Esq., |

it being understood and agreed that each party will use reasonable efforts to send copies of any notices to the addresses marked "with a copy to" hereinabove set forth; provided, however, that failure to deliver such copy or copies shall have no consequence whatsoever to the effectiveness of any notice made to the undersigned or BFI Capital. Each party to this Guaranty may designate a change of address by notice given, as herein provided, to the other party fifteen (15) days prior to the date such change of address is to become effective.

19.    This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of the State of New York without regard to principles of conflicts of laws. The undersigned acknowledge and agree that this Guaranty is, and is intended to be, an instrument for the payment of money only, as such phrase is used in Section 3213 of the Civil Practice Law and Rules of the State of New York, and the undersigned has been fully advised by its counsel of BFI Capital's rights and remedies pursuant to said Section 3213.

20.    The undersigned agree to submit to personal jurisdiction in the State of New York in any action or proceeding arising out of this Guaranty. In furtherance of such agreement, the undersigned hereby agree and consent that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by registered or certified mail to, or by personal service at, the last known address of the undersigned, whether such address be within or without the jurisdiction of any such court. The undersigned hereby further agree that the venue of any litigation arising in connection with the Debt or in respect of any of the obligations of the undersigned under this Guaranty, shall, to the extent permitted by law, be in New York County.

21.    The undersigned absolutely, unconditionally and irrevocably waive any and all right to assert or interpose any defense (other than the final and indefeasible payment in full of the Debt), setoff, counterclaim or cross-claim of any nature whatsoever with respect to this Guaranty or the obligations of the undersigned under this Guaranty, or the obligations of any other person or party (including without limitation, the Borrower) relating to this Guaranty, or the obligations of the undersigned hereunder or otherwise with respect to the Loan in any action or proceeding brought by BFI Capital to collect the Debt, or any portion thereof, or to enforce the obligations of the undersigned under this Guaranty (provided, however, that the foregoing shall not be deemed a waiver of the right of the undersigned to assert any compulsory counterclaim maintained in a court of the United States, or of the State of New York if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of the right of the undersigned to assert any claim which would constitute a defense, setoff, counterclaim or cross-claim of any nature whatsoever against BFI Capital in any separate action or proceeding). The undersigned hereby undertake and agree that this Guaranty shall remain in full force and effect for all of the obligations and liabilities of the undersigned hereunder, notwithstanding the maturity of the Loan, whether by acceleration, scheduled maturity or otherwise.

22.    No exculpatory provisions which may be contained in the Note, the Mortgage or in any other Loan Document shall in any event or under any circumstances be deemed or construed to modify, qualify, or affect in any manner whatsoever the obligations and liabilities of

the undersigned under this Guaranty.

23.    The obligations and liabilities of the undersigned under this Guaranty are in addition to the obligations and liabilities of the undersigned under the Other Guaranties (as hereinafter defined). The discharge of any or all of the undersigned's obligations and liabilities under any one or more of the Other Guaranties by the undersigned or by reason of operation of law or otherwise shall in no event or under any circumstance constitute or be deemed to constitute a discharge, in whole or in part, of the undersigned's obligations and liabilities under this Guaranty. Conversely, the discharge of any or all of the undersigned's obligations and liabilities under this Guaranty by the undersigned or by reason of operation of law or otherwise shall in no event or under any circumstance constitute or be deemed to constitute a discharge, in whole or in part, of the undersigned's obligations and liabilities under any of the Other Guaranties. The term "Other Guaranties" as used herein shall mean any other guaranty of payment, guaranty of performance, completion guaranty, indemnification agreement or other guaranty or instrument creating any obligation or undertaking of any nature whatsoever (other than this Guaranty) now or hereafter executed and delivered by the undersigned to BFI Capital in connection with the Loan.

25.    The undersigned hereby irrevocably and unconditionally waive, and BFI Capital, by its acceptance of this Guaranty, irrevocably and unconditionally waive, any and all right to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to this Guaranty.

26.    This Guaranty may be executed in two (2) or more counterparts, which together shall constitute one (1) integrated document. Upon executing any one (1) counterpart hereof, any signatory shall be fully bound and liable hereunder irrespective of whether any or all of the other signatories have signed such or any other counterpart hereof.

**NO FURTHER TEXT ON THIS PAGE**

IN WITNESS WHEREOF, the undersigned have duly executed this Guaranty the day and year first above set forth.

PRM REALTY GROUP, LLC,
an Illinois limited liability company
By:  PRM MANAGEMENT OF ILLINOIS, INC.,
an Illinois corporation, its Manager

By: _____
     Peter R. Morris, Its Authorized Officer

BAGELPIPE, LLC,
a Hawaii limited liability company, Its Manager
By:  PRM REALTY GROUP, LLC,
an Illinois limited liability company, its Manager
        By:  PRM MANAGEMENT OF ILLINOIS,
        INC., an Illinois corporation, Its Manager

By: _____
     Peter R. Morris,
     Its Authorized Officer

RCCI MANAGEMENT, LLC,
a Delaware limited liability company

By: _____
     David Hulihee, Its Manager

_____
PETER R. MORRIS

_____
JOHN HENRY FELIX

STATE OF
COUNTY OF

        On the 9th day of February, 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared Peter R. Morris personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Notary Pu.
No. 0.        .324
Qualified         · County
Commission E·    ·ber 25, 2009

12

IN WITNESS WHEREOF, the undersigned have duly executed this Guaranty the day and year first above set forth.

PRM REALTY GROUP, LLC,
an Illinois limited liability company
By: PRM MANAGEMENT OF ILLINOIS, INC.,
an Illinois corporation, its Manager

By:_____
      Peter R. Morris, Its Authorized Officer

BAGELPIPE, LLC,
a Hawaii limited liability company, its Manager
By: PRM REALTY GROUP, LLC,
an Illinois limited liability company, its Manager
      By: PRM MANAGEMENT OF ILLINOIS,
      INC., an Illinois corporation, Its Manager

By:_____
      Peter R. Morris,
      Its Authorized Officer

RCCI MANAGEMENT, LLC,
a Delaware limited liability company

By_____
      David Hulihee, Its Manager

PETER R. MORRIS_____

JOHN HENRY FELIX_____

STATE OF
COUNTY OF

On the 9th day of February, 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared Peter R. Morris personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

12

STATE OF *HAWAII*
COUNTY OF *HONOLULU*

On the 9th day of February, 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared David Hulihee personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public *IDA STEBBINS*
*my commission expires 21 NOV 2009*

L.S.

STATE OF *HAWAII*
COUNTY OF *HONOLULU*

On the 9th day of February, 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared John Henry Felix personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individuals, or the persons upon behalf of which the individual acted, executed the instrument.

L.S.

Notary Public *IDA STEBBINS*
*my commission expires 21 NOV 2009*

**EXHIBIT A**

Note:  The term "Note" as used in this Guaranty shall mean (a) two (2) certain Promissory Notes dated February 9, 2006 in the total principal sum of up to $18,500,000.00.

Mortgage:  The term "Mortgage, Security Agreement and Financing Statement" as used in this Guaranty shall mean (a) a certain Mortgage, Security Agreement and Financing Statement dated February 9, 2006, which Mortgage, Security Agreement and Financing Statement in the principal amount of up to $18,500,000.00, covers the fee estate of Borrower in certain premises known as Paradise Memorial Park; and intended to be duly recorded in the City and County of Honolulu, State of Hawaii.